# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN LAMEY AS EXECUTOR FOR
THE ESTATE OF MARIE LAMEY,

        Plaintiff,

     v.

NORTHUMBERLAND COUNTY, et al.,

        Defendants.

CIVIL ACTION NO. 4:13-CV-00379

(BRANN, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is a civil rights action, initiated upon the filing of the complaint in this matter on February 13, 2013, seeking an award of compensatory and punitive damages. (Doc. 1). In the complaint, the plaintiff pleads a claim under 42 U.S.C. § 1983 against each of the ten Defendants, asserting that the Defendants' actions constituted a state-created danger that deprived the Plaintiff's decedent of her life in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. In addition, the Plaintiff pleads state negligence claims against each defendant based on the same conduct.

On May 17, 2013, the Northumberland County Defendants[1] filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 19). On

---

[1] The "Northumberland County Defendants" are: Northumberland County, a political subdivision of the Commonwealth of Pennsylvania; the Northumberland County Board of Commissioners, the county's governing body; the individual County Commissioners, Vinny Clausi, Frank Sawicki, and Merle Phillips; Kymberley Best, the Chief Clerk of the County; Paulo Froutz, Emergency Management Director for the County; and County employees Jason Lehman and Eric Wendt.

May 21, 2013, they filed a brief in support of their motion. (Doc. 20). On June 5, 2013, the Plaintiff filed his response to this motion and a brief in opposition. (Doc. 21; Doc. 22).

On June 7, 2013, Defendant Rush Township filed a separate motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, together with a brief in support of its motion. (Doc. 23; Doc. 24). On July 5, 2013, the Plaintiff filed his response to this motion and a brief in opposition. (Doc. 25; Doc. 26). On July 12, 2013, Rush Township filed its reply brief. (Doc. 27).

The motions are now ripe for decision on the papers. *See* Fed. R. Civ. P. 78(b); L.R. 7.9.

## I. FACTUAL BACKGROUND

Plaintiff's complaint (Doc. 1) makes the following factual allegations, which for purposes of deciding the Defendants' motions to dismiss, this Court will accept as true. On the evening of February 14, 2011, Marie Lamey and her husband, the Plaintiff, were at their home in Rush Township, located within Northumberland County, Pennsylvania. (Doc. 1, ¶17). Marie Lamey became unresponsive and lost consciousness. (Doc. 1, ¶18). A member of the family dialed 911 to call for medical assistance. (Doc. 1, ¶19). Although the Lamey home was located within Northumberland County, the call was routed to the 911 system in neighboring Montour County, resulting in the dispatch of an ambulance from Danville EMS, located approximately eight miles from the Lamey home. (Doc. 1, ¶¶20-22). The Danville EMS ambulance arrived at the Lamey home approximately fourteen minutes later. (Doc. 1, ¶23). Upon arrival, the Danville EMS personnel found Marie Lamey unconscious and immediately began administering CPR, and then they administered cardiac medications, inserted an endotracheal tube, and placed Marie Lamey on a ventilation machine. (Doc. 1, ¶¶24-27). Marie Lamey was then transported to the emergency department at Geisinger Medical Center in Danville,

Pennsylvania. (Doc. 1, ¶30). She passed away several days later. (Doc. 1, ¶31). The causes of death included respiratory failure, anoxic brain injury, and cardiac arrest. (Doc. 1, ¶32).

While Danville EMS was on scene, a second ambulance was dispatched from Elysburg EMS, located 1.6 miles from the Lamey home. (Doc. 1, ¶28). The Elysburg EMS ambulance arrived at the Lamey home just four minutes after being dispatched. (Doc. 1, ¶29). The complaint alleges that Marie Lamey's death was caused by the delay in instituting emergency care at the scene, and that proper routing of the initial 911 call would have resulted in the prompt dispatch of an ambulance from Elysburg EMS and earlier commencement of emergency care on scene, which may have saved Marie Lamey's life. (Doc. 1).

The complaint alleges that the call-routing error was caused by a problem in the mapping software used by the Northumberland County 911 system. A new computer-aided dispatch system for Northumberland County was instituted on January 25, 2011. (Doc. 1, ¶35). In its first few weeks of operation, the new dispatch system had experienced several technical issues, the nature of which are not specified in the complaint. (Doc. 1, ¶36). The particular technical problem that manifested on February 14, 2011, however, involved a discrepancy between the parcel numbers in each township within the county and the mailing addresses assigned to the individual houses or buildings, which was mishandled by the mapping software and resulted in dispatchers receiving the 911 call with an incorrect location for the caller. (Doc. 1). Northumberland County allegedly knew of this particular problem and had requested that the townships within the county modify their residential addresses to permit the software to correctly map each caller's location. (Doc. 1). Rush Township allegedly failed to comply with this request, and Northumberland County allegedly failed to adequately train its dispatchers to handle the addressing issue. (Doc. 1, ¶).

The Defendants have moved to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted.

## II.  MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so – he may opt to stand on the pleadings rather than filing an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the compliant by reference, and matters of

which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[2]

## III. DISCUSSION

### A. SECTION 1983 CLAIMS

The Plaintiff has pleaded a § 1983 civil rights claim against each of the Defendants, asserting that their actions deprived Marie Lamey of her life in violation of the due process clause of the Fourteenth Amendment. The Defendants have moved to dismiss this civil rights claim on the ground that the complaint fails to allege a deprivation of substantive due process.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the Plaintiff must establish that the Defendants, acting under color of state law, deprived the decedent of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

It is well established that "the Due Process Clause[] generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or

---

[2] In addition to the complaint in this matter (Doc. 1), the Court has reviewed the sole exhibit attached to the complaint (Doc. 1-1), which appears to be an excerpt from the minutes of a public meeting of the Northumberland County Board of Commissioners on March 15, 2011, during which recent problems with the 911 computer-aided dispatch system were discussed.

property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The Third Circuit has further held that "there is no federal constitutional right to rescue services, competent or otherwise. Moreover, because the Due Process Clause does not require the State to provide rescue services, it follows that we cannot interpret that clause so as to place an affirmative obligation on the State to provide competent rescue services if it chooses to provide them." *Brown v. Commonwealth of Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003); *see also Badway v. City of Philadelphia*, 415 Fed. App'x 420, 421 (3d Cir. 2011) (relying on *Brown* in rejecting argument that, by inducing public to rely on flawed emergency services, municipality was liable for death caused by delay in arrival of paramedics).

The Supreme Court has recognized two exceptions to this general rule: the "special relationship" exception and the "state-created danger" exception. *See DeShaney*, 489 U.S. at 200–01; *Kneipp v. Tedder*, 95 F. 3d 1199, 1201 (3d Cir. 1996). Under *DeShaney*, a "special relationship" exists only where the State affirmatively acts to curtail the individual's freedom such that he or she can no longer care for him or herself, such as through incarceration, involuntary institutionalization, or similar restraint of personal liberty. *See DeShaney*, 489 U.S. at 199–201; *see also Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 379–80 (E.D. Pa. 1995) (finding no "special relationship" was established by a 911 dispatcher's assurances that help was on its way), *aff'd*, 91 F.3d 125 (3d Cir. 1996) (table decision). The Plaintiff does not argue that a special relationship existed in this case.

Under the "state-created danger" theory, "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (emphasis in original). To establish a

6

claim under § 1983 claim under the state-created danger theory, a plaintiff must prove the following four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;

> 2) a state actor acted with a degree of culpability that shocks the conscience;

> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow*, 719 F.3d at 177.

With respect to its caveat in the third element, the Third Circuit has previously noted that "when the alleged violation involve[s] a policy directed at the public in general, ... the basis for the state-created danger theory [i]s obviated insofar as the defendant lacked specific knowledge of the plaintiffs' condition, and a relationship between the defendants and plaintiffs did not exist." *Kneipp*, 95 F.3d at 1208 (citing *Mark*, 51 F.3d at 1153).

Moreover, "the Third Circuit's cases uniformly require physical intervention in which the state, through its action, imposes limits on a person's freedom of action that make the person more vulnerable to danger." *Perez v. City of Philadelphia*, 701 F. Supp. 2d 658, 668 (E.D. Pa. 2010). State-created danger liability requires an affirmative act by state actors that "either impermissibly limited the freedom of the plaintiffs to act on their own behalf or barred their access to outside support." *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992) (en banc); *see also Perez*, 701 F. Supp. 2d at 669. Nowhere in the complaint does the Plaintiff allege an action by any of the Defendants that limited the options available to the decedent after her family called 911: Marie Lamey's family could have taken her to the

7

hospital, called a private ambulance, or engaged in some other form of self-help. Instead, they voluntarily limited their freedom of action by relying on the 911 call alone. *See Perez,* 701 F. Supp. 2d at 670. Reliance on rescue services dispatched pursuant to a 911 call, by itself, is insufficient to establish state-created danger liability. *See Ye v. United States,* 484 F.3d 634, 640 (3d Cir. 2007); *Bright v. Westmoreland County,* 443 F.3d 276, 284 (3d Cir. 2006); *Brown,* 318 F.3d at 483; *Thornton v. City of Pittsburgh,* 777 F. Supp. 2d 946, 954 (W.D. Pa. 2011); *Perez,* 701 F. Supp. 2d at 670.

In support of his argument, the Plaintiff relies exclusively on an unpublished Eastern District of Pennsylvania case, *Beswick v. City of Philadelphia,* No. CIV. A. 00-1304, 2001 WL 210292 (E.D. Pa. Mar. 1, 2001), attempting to draw a parallel between the facts of *Beswick* and those of this case. However, *Beswick* appears to be in conflict with subsequent Third Circuit decisions that have explicitly rejected the proposition that delayed rescue services may give rise to state-created danger liability. *See Brown,* 318 F.3d at 478; *Badway,* 415 Fed. App'x at 421. It is also in conflict with a subsequent decision by the same court. *See Perez,* 701 F. Supp. 2d at 670.

Moreover, the facts of *Beswick* are distinguishable from the facts of this case. The conduct at issue in *Beswick* was a 911 dispatcher's referral of a medical emergency call to a private ambulance company in return for a referral fee, and in violation of an established regulation that required all medical emergencies to be referred directly to the fire department; here, the conduct alleged in the complaint was the adoption and implementation of a flawed computer-aided dispatch system by the county. First, the dispatcher's act in *Beswick* was a purposeful one, as opposed to the inadvertent delay involved in this case. *See Brown,* 318 F.3d at 481 (noting that a delay by EMTs in reaching the decedent was not cause by their purposely delaying their rescue efforts). Second, the dispatcher's act in *Beswick* effectively barred the

victim from receiving fire department assistance, re-routing the call for help instead to a private ambulance company. *See Beswick*, 2001 WL 210292, at *15 (finding that dispatcher's acts prevented victim from receiving promised public aid from fire department paramedics); *see also D.R.*, 972 F.2d at 1376; *Perez*, 701 F. Supp. 2d at 669. Third, the dispatcher's act in *Beswick* concerned a discrete victim whose perilous condition was known to the dispatcher when she referred the call to a private ambulance company instead of the fire department, whereas the adoption and implementation of an allegedly flawed computer-aided dispatch system in this case was an act directed at the public in general, without any specific knowledge of Marie Lamey's condition (which, of course, had not yet occurred). *See Kneipp*, 95 F.3d at 1208. Indeed, this case better resembles the earlier *Huston* case discussed within the *Beswick* opinion, in which the same court found no state-created danger in a municipality's flawed 911 system, where a combination of human and computer error caused a delay that allegedly contributed to the decedent's death. *See Beswick*, 2001 WL 210292, at *14; *Huston v. Montgomery County*, No. CIV. A. 95-4209, 1995 WL 766308, at *4–*6 (E.D. Pa. Dec. 28, 1995).

Accordingly, the complaint has failed to state a plausible claim of violation of the Marie Lamey's substantive due process rights.[3] The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State*

---

[3] To the extent the complaint seeks to impose liability upon the two municipalities, Northumberland County and Rush Township, it should be noted that they may only be held vicariously liable pursuant *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). To state a § 1983 claim against a municipality, a plaintiff must allege (1) a constitutional injury (2) that was caused when the municipality took action pursuant to a custom or policy. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). But regardless of any policy or practice it may have adopted, municipal liability under *Monell* requires an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).

*Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The factual allegations in this case are not in dispute, and even accepting all of the Plaintiff's allegations as true, there is no plausible claim for a violation of Marie Lamey's right to substantive due process. Further amendment will not cure this deficiency. Therefore, it is recommended that the Plaintiff's § 1983 claims be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

B.   STATE LAW NEGLIGENCE CLAIMS

The remaining claims are substantively identical state law negligence claims against each of the Defendants. Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, it is recommended that the Plaintiff's state law negligence claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Recommendation

Based on the foregoing, it is recommended that:

1. The Northumberland County Defendants' motion to dismiss (Doc. 19) be **GRANTED**;

2. The Rush Township Defendants' motion to dismiss (Doc. 23) be **GRANTED**;

3. Counts I, III, V, VII, IX, XI, XIII, XV, XVII, and XIX of the complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

4. Counts II, IV, VI, VIII, X, XII, XIV, XVI, XVIII, and XX of the complaint (Doc. 1) be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3); and

5. The Clerk be directed to **CLOSE** this case.


**BY THE COURT:**


**Dated: January 22, 2014**          *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN LAMEY AS EXECUTOR FOR
THE ESTATE OF MARIE LAMEY,

               Plaintiff,

       v.

NORTHUMBERLAND COUNTY, et al.,

               Defendants.

CIVIL ACTION NO. 4:13-CV-00379

(BRANN, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 22, 2014**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **January 22, 2014**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**